**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

SAM PEREZ,

    Petitioner,

    v.

M. ELIOT SPEARMAN,

    Respondent.

No.  2:19-CV-1223-KJM-DMC-P

FINDINGS AND RECOMMENDATIONS

        Petitioner, a state prisoner proceeding with retained counsel, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the Court are Petitioner's petition for a writ of habeas corpus, ECF No. 1, and Respondent's answer, ECF No. 28.  Petitioner did not file a traverse.  Respondent has lodged the state court record, ECF No. 27.

        Petitioner asserts four claims: (1) there was insufficient evidence to support the jury's true finding on the gang enhancement; (2) he was denied the opportunity to properly cross-examine a witness that invoked the Fifth Amendment privilege; (3) two jury instructions were erroneous; and (4) he received ineffective assistance of counsel.  The most recent reasoned decision on the matter is from the California Court of Appeal.  Having reviewed the petition and the record, the undersigned recommends that Petitioner's petition be denied.

/ / /

/ / /

# I. BACKGROUND

A. **Facts**[1]

The following is a reproduction of the underlying facts from the California Court of Appeal's decision, which Petitioner adopted in his petition before this Court:

> This is the unfortunate tale of violence arising out of interactions between rival criminal gangs centered respectively in Northern and Southern California. Defendant does not challenge the sufficiency of the evidence to support his underlying conviction or the enhancement for personal use of the firearm, so in this regard we provide a limited overview of events to give context to his arguments. As for the gang enhancement, we will incorporate those facts in the Discussion.
>
> The victim and four other people were walking up the street to go to a liquor store on a February evening in 2014. The victim's brother was the only one wearing red clothing, a color affiliated with Norteños, the Northern California gang. As a group of four people walked past them, the victim's brother shouted out a call to them declaring this affiliation. The other group, however, shouted out a call indicating affiliation with the Sureños, the rival gang. One of the victim's group cautioned the brother not to make any trouble. The victim's group lingered at the intersection as the other group walked up to the liquor store.
>
> Surveillance footage at the liquor store showed defendant, his brother, and two others present. As they left the store, a private security officer asked them to move on with their open containers; he overheard one of them saying "are we going to take this shit," but did not know if this was in response to the directive to leave. On their way back down the street, defendant's group reencountered the victim's group walking toward the liquor store. The victim's contentious brother, "being an asshole," again confronted a member of defendant's group over the supremacy of their two gangs even though he was not on his own "turf." Defendant's older brother stepped in and waved a blue bandana in the color of the Sureño gang at the victim's brother. At some point, one of defendant's companions punched the victim's brother in the jaw, and the victim attacked defendant's companion. The victim's brother and defendant's brother began to fight as well. Ultimately, the specific details of this prelude of mutual combat are immaterial to the appeal, because defendant then pulled out a gun and started firing it around him. If we credit the prosecutor's characterization of a surveillance video of the crime, defendant first aimed at where the victim was fighting with the person who attacked the victim's brother, and then aimed at where the victim's and defendant's brothers were fighting. Defendant shot the victim in the stomach and defendant's brother in the neck. As everyone scattered, defendant fired more shots and then ran off.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Findings of fact in the last reasoned state court decision are entitled to a presumption of correctness, rebuttable only by clear and convincing evidence. See Runningeagle v. Ryan, 686 F.3d 759 n.1 (9th Cir. 2012). Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

2

> The bullet exited the victim's armpit, and in addition to repairing his stomach doctors needed to remove his spleen. The bullet lodged in the chest of defendant's brother after entering his neck; doctors released him without the need to perform any surgery (presumably leaving the bullet in place).
> Defendant testified. On the day of the shooting, he was hungover. He started drinking again in mid-afternoon at a friend's house. After buying some cannabis, he smoked it with his brother and the third person in the group of four. The fourth joined them. By the time they walked to the liquor store, defendant had drank seven or eight beers and two tequila shots.
> When they encountered the other group the second time, defendant feared for his life. Because one of the other group had his hands in his pockets, defendant thought he might have a gun. Given an uncle's experiences at the hands of the Norteños, and concerned for his brother's safety, defendant fired his gun the first time to scare people off. Regardless of how it may have appeared in the video, he was not shooting at the victim. He did not know where he was aiming in the second or subsequent shots. He ran off. He contacted another uncle visiting from Arizona, who drove him there. Defendant lived with the family until his arrest.

ECF No. 1 at 20, 53.

### B. **Procedural History**

In 2015, a jury convicted Petitioner of attempted murder, with true findings on firearm and gang allegations. The trial court sentenced Petitioner to an aggregate term of 42 years to life. Petitioner appealed his conviction to the California Court of Appeal, alleging the same constitutional violations he raises in this petition. The decision from the California Court of Appeal is the latest reasoned decision on the merits. See ECF No. 1 at 53. There, the court affirmed the conviction, but lengthened Petitioner's gang enhancement from 10 to 15 years and remanded the matter in the light of a change in the firearm enhancement law.[2] The California Supreme Court denied review without comment or citation.

On remand, the trial court declined to exercise its discretion to strike or dismiss the firearm enhancement. Petitioner again appealed to the Court of Appeal arguing that the trial court abused its discretion by not striking or modifying the firearm enhancement and that it improperly imposed financial sanctions without first determining his ability to pay, as required under People v. Duenas, 30 Cal.App.5th 1157 (2019). The Court of Appeal affirmed again. Petitioner did not

---

[2] Effective January 1, 2018, the California Legislature permitted sentencing courts discretion to either strike or dismiss a firearm enhancement under California Penal Code Section 12022.53.

3

petition the California Supreme Court for further review.[3]

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[3]  Because Petitioner's second appeal to the California Court of Appeal (C088426; ECF No. 27-27) does not contain claims he alleges in the instant petition, the latest reasoned decisions is the first Court of Appeal decision (C080851; ECF No. 27-20).

4

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 283 F.3d 1040, 1052 n.6

(9th Cir. 2002).  If so, the next question is whether such error was structural, in which case federal habeas relief is warranted.  See id.  If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict or was harmless.  See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S. 510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply.  See Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous.  See Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at 75.  As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

### III. DISCUSSION

Petitioner contends the following violations of his federal constitutional rights occurred at trial: (1) there was insufficient evidence to support the jury's true finding on the gang enhancement; (2) he was denied the opportunity to properly confront by cross-examination a witness who invoked the Fifth Amendment privilege; (3) two jury instructions (attempted murder and involuntary intoxication) were erroneous; and (4) he received ineffective assistance of counsel.  See ECF No. 1.  Respondent contends Petitioner is not entitled to federal habeas relief

6

because the state court's determinations on these claims were neither contrary to nor based on an unreasonable application of clearly established federal law. ECF No. 28.

### A. Sufficiency of the Evidence to Support the Gang Enhancement

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that, upon the record of evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979).[4] Under Jackson, the court must review the entire record when the sufficiency of the evidence is challenged on habeas. See id. It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991); see also Herrera v. Collins, 506 U.S. 390, 401-02 (1993). The federal habeas court determines sufficiency of the evidence in the context of the substantive elements of the criminal offense, as defined by state law. See Jackson, 443 U.S. at 324 n.16.

Petitioner argues that (1) the People "presented no evidence as to what subsets the Ruelas brothers or Mr. Ardon were associated with, but simply relied on the evidence that [Petitioner], the Ruelas brothers and Mr. Ardon were all members of the Sureños gangs" and (2) that Detective Richardson's testimony that Sureños subsets pay taxes to the La Eme or the Mexican Mafia should have been excluded as testimonial hearsay. ECF No. 1 at 15-22. The California Court of Appeal addressed both contentions.

///
///
///

---

[4] Even though Jackson was decided before AEDPA's effective date, this expression of the law is valid under AEDPA's standard of federal habeas corpus review. A state court decision denying relief in the face of a record establishing that no rational jury could have found proof of guilt beyond a reasonable doubt would be either contrary to or an unreasonable application of the law as outlined in Jackson. Cf. Bruce v. Terhune, 376 F.3d 950, 959 (9th Cir. 2004) (denying habeas relief on sufficiency of the evidence claim under AEDPA standard of review because a rational jury could make the finding at issue).

The California Court of Appeal discussed the testimony regarding the gang enhancement as follows:

> The gang expert [Detective Richardson] was a detective assigned to the gang unit in 2012, specializing in south Hispanic gangs in Sacramento. In her patrols over the course of four years, she routinely had contact with hundreds of these gang members in various capacities (whether as victims of crimes, arrestees, or witnesses), as well as their family members and other victims or witnesses. Through these, she learned the gang culture. She also underwent numerous training courses on the subject.
>
> Immaterial for our purposes, she concluded that defendant's postings on social media indicated an association <u>with the larger gang</u>, the Sureños. Defendant also admitted this association to officers on more than one occasion, and bears a tattoo that none but gang members could display without consequence. The gang expert identified the subset of a codefendant, and provided background information about another subset, <u>but did not specify one for defendant</u>.
>
> The genesis for the Norteños and Sureños were two rival prison gangs. The street gangs act as the outside operatives for these two gangs. A prison gang is the "top" of its gang structure. It controls the operations to maintain the overall strength and unity. A prison leader of the gang will go so far as to direct street operatives to back off from gang activities if they draw too much attention from law enforcement, because an arrested gang member is not going to be able to generate revenue for the gang.
>
> On a daily basis, the expert reviews all the crimes committed in south Sacramento. As a result, she is familiar with predicate crimes occurring in the past involving members of the gang. Among these were a 2013 assault with a deadly weapon that two members of the Sureños committed; <u>she did not identify any particular subset.</u> Another assault with a deadly weapon in 2011 involved a member of the Sureños; again, <u>she did not specify any particular subset</u>.
>
> All members pay "taxes" to the prison gang as part of the overall structure and hierarchy. She derives this knowledge from confidential sources. She therefore declined to state whether she had specific information about whether the two local subsets she had been discussing paid taxes to the prison gang. She did not have any evidence that a codefendant in particular paid taxes, and was not asked if there was evidence that defendant in particular paid taxes.

ECF No. 27-20 at 9-10 (emphasis in original).

Petitioner filed a motion for a new trial based on the then-recent California Supreme Court decision in <u>Prunty v. People</u>, 62 Cal.4th 59 (2015). ECF No. 27-2 at 84-104. He argued that the gang evidence from trial was not sufficient under <u>Prunty</u>. The trial court denied the motion, finding <u>Prunty</u> did not apply because the prosecution did not rely on evidence of a subset gang. ECF No. 27-2 at 156-178. The case of <u>Prunty</u>, as described by the trial court, dealt with establishing a connection gang through a subset. The trial court concluded, "[i]n

8

[Petitioner's] case, the prosecution did not appear to be relying on the behavior of subsets in showing the existence of a criminal street gang. Thus, it is not clear that the discussion in Prunty, supra, applies to this case." Id. at 175. The trial court also noted that the two predicate offenses—by the Ruelas brothers and Ardon were committed as Sureños—and not as a subset. Id. at 176. The Court of Appeal agreed with the trial court that Prunty does not apply to this case because the prosecution did not rely on evidence of a subset to establish Petitioner's gang connection. ECF No. 27-20 at 12.

The Court of Appeal considered Petitioner's other argument that Detective Richardson's testimony that all Sureños subsets pay taxes to La Ema or the Mexican Mafia should have been excluded because People v. Sanchez, 63 Cal.4th 665 (2016) limits an expert witness from relating case-specific hearsay when explaining the basis for his or her opinion. Petitioner argues there and here that the evidence of Sureños subsets paying taxes should have been excluded as testimonial hearsay and that without it, there is not sufficient evidence to link the predicate crimes with the crime in this case to establish the gang enhancement. ECF No. 1 at 26-27. The Court of Appeal first held that Sanchez does not apply here, because as stated above, the People did not rely on evidence of a gang subset to establish the gang enhancement. ECF No. 27-20 at 11-12. The Court went on to conclude that even

> "[i]f the evidence regarding the payment of tribute to the prison gang were excluded, we do not find it reasonably probable that the jury would have failed to sustain the enhancement in light of the expert testimony about the overall structure of the larger gang, on which basis the jury could reasonably find that both the perpetrators of the predicate acts and defendant were acting with specific intent to promote the larger gang."

ECF No. 27-20 at 12.

The appellate court's decision that Prunty did not apply to this case and that there was sufficient evidence to support the jury's true finding was supported by the record. To successfully allege a gang enhancement, California law requires the prosecution to prove two separate and distinct elements beyond a reasonable doubt: first, that the defendant committed a felony "for the benefit of, at the direction of, or in association with [a] criminal street gang"; and second, that the defendant committed the crime "with the specific intent to promote, further, or

assist" in criminal conduct by gang members. Cal. Penal Code § 186.22(b)(1). California law allows the prosecution to prove the existence of a larger criminal street gang, or several subsets of a gang. See People v. Vasquez, 247Cal.App.4th 909, 924 (2016). Here, the gang expert connected Petitioner to the larger gang entity of the Sureños—not a subset. The expert testified that Petitioner's social media posts demonstrated a connection to the Sureños, he has a Sureños tattoo, and he has admitted to law enforcement his association with Sureños gang. ECF No. 27-20 at 9-10. Viewing the evidence in the light most favorable to the prosecution and presuming the jury resolved all conflicting inferences from the evidence against Petitioner, the Court finds that a rational trier of fact could find that Petitioner's convictions were "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members" beyond a reasonable doubt. See Cal. Penal Code § 186.22(b)(1); Jackson v. Virginia, 443 U.S. 307, 319, 326 (1979); Walters v. Maass, 45 F.3d 1335, 1358 (9th Cir. 1995). Thus, the appellate court's determination that the trial court did not violate Petitioner's confrontation rights was neither contrary to nor based on an unreasonable application of clearly established federal law.

Moreover, even if Petitioner could show that the appellate court erroneously applied Prunty to his case, federal habeas relief is unavailable for violations of state law or for alleged errors in the interpretations or application of state law. Swarthout v. Cooke, 526 U.S. 216, 219-22 (2011). Indeed, he fails to identify authority of the U.S. Supreme Court that the Court of Appeal's rejection of his claim either contravenes or unreasonably applies.

///
///
///
///
///
///
///
///

**B.     Ability to Confront Testimony of Saul Campos-Lares**[5]

Under the Sixth Amendment's Confrontation Clause, "[i]n all criminal prosecutions, the accused shall enjoy the right. . . to be confronted with the witnesses against him." U.S. Cons. Amend. VI; see also Crawford v. Washington, 541 U.S. 36, 42 (2004). "Generally speaking, a court violates the Confrontation Clause only when it prevent a defendant from examining a particular and relevant topic. . . ." Fenenbock v. Dir. of Corr. for Cal., 692 F.3d 910, 919 (9th Cir. 2012). The Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination "that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam)). The Confrontation Clause includes no guarantee that witnesses will not be evasive. See Delaware v. Fensterer, 474 U.S. at 22. So long as the defense is provided a "full and fair opportunity to probe and expose. . . infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony," the Confrontation Clause is satisfied. Id.

Where a witness asserts a valid privilege against self-incrimination on cross-examination, all or part of that witness's testimony must be stricken if invocation of the privilege blocks inquiry into matters which are "direct" and are not merely "collateral." United States v. Seifert, 648 F.2d 557, 561 (9th Cir. 1980) (citing Williams, 626 F.2d at 702). "Where the privilege has been invoked as to purely collateral matters, there is little danger of prejudice to the defendant and, therefore, the witness's testimony may be used against him." Williams, 626 F.2d at 702 (quoting United States v. Cardillo, 316 F.2d 606, 611 (2d Cir. 1963)). Striking a witness's entire testimony because he invokes the Fifth Amendment is "an extreme sanction." United

---

[5] Petitioner also argues briefly that if trial counsel failed to preserve this issue (the motion to strike), then he was deprived of the effective assistance of counsel. ECF No. 1 at 31. Specifically, Petitioner argues, "[i]n denying [Petitioner's] motion to strike Mr. Campos-Lares's testimony, the [trial] court relied, in part, on its finding that defense trial counsel had not preserved his objection. (2 CT 450-452.)" The Court finds this argument perplexing. In reviewing the cited portion of the trial court transcript, the trial court noted that Petitioner did not object to Campos-Lares testimony as impermissible expert opinion—the trial court did not say Petitioner failed to object to Campos-Lares invoking the Fifth Amendment or the limitations of cross-examination. ECF No. 27-2 at 152 (2 CT 451). Because the Court reaches the merits of Petitioner's argument, it will not address whether his trial counsel was ineffective for not preserving the issue for review.

11

States v. Lord, 711 F.2d 887, 892 (9th Cir. 1983).

Petitioner argues that the trial court erred when it refused to strike all of Campos-Lares' testimony after he invoked his Fifth Amendment privilege, which he argues rendered Campos-Lares unavailable for full cross-examination. ECF No. 1 at 28. In response, Respondent cites to the appellate court's decision and argues:

> That was not remotely an inexplicable "bluder[ing]," so to permit relitigation here. Mays v. Hines, 141 S. Ct. 1145, 1149 (2021). There is at least a "reasonable argument," [Harrington v.]Richter, 562 U.S. [86,] 105 [(2011)], that no restriction was placed on Petitioner's cross-examination, save as to the statement as to killing. § 2254(d)(2). There is at least a reasonable argument that, given the striking of that statement, there was "wide latitude" to find that questions surrounding that issue were at the most "only marginally relevant," see Michigan v. Lucas, 500 U.S. 145, 149 (1991). § 2254(d)(1).

ECF No. 28 at 6.

As stated above, Campos-Lares is Petitioner's uncle and Petitioner called Campos-Lares following the shooting. The prosecution called Campos-Lares and questioned him about his involvement in the Sureños gang and his relationship with Petitioner. Following the People's direct-examination, counsel for one of Petitioner's codefendants crossed Campos-Lares and the following colloquy occurred:

> [COUNSEL:] Good morning, Mr. Lares.
>
> [CAMPOS-LARES:] Good morning.
>
> [COUNSEL:] Do you mind if I ask you that? How old are you?
>
> [CAMPOS-LARES:] Uh, 35.
>
> [COUNSEL:] Okay. In all your years of being a Sureno, have you gone around shooting and killing Nortenos?
>
> [CAMPOS-LARES:] Yes, ma'am.
>
> [COUNSEL:] Have you killed anybody?
>
> [CAMPOS-LARES:] Yes. Yes.
>
> [COUNSEL:] You have?
>
> [CAMPOS-LARES:] Yes.
>
> [THE COURT:] All right. I think we're at the point where I need to appoint counsel; so do you want to go further into this area?

[COUNSEL:] I don't.

[THE COURT:] All right. Okay. Then keep going.

[COUNSEL:] Those are all the questions I have. Those were your only questions?

[COUNSEL:] Yes, sir.

[THE COURT:] All right. Counsel for Defendant Garcia.

ECF No. 27-6 at 280.

Following that cross-examination, counsel for Petitioner's other codefendant cross-examined Campos-Lares. Id. at 280-81. Petitioner's counsel then cross-examined Campos-Lares. The cross-examination spanned several topics, including Campos-Lares gang involvement and his connection to Petitioner. ECF No. 27-6 at 288-ECF No. 27-7 at 4. Neither the People nor the trial court interrupted Petitioner's cross to limit it. At the conclusion of Petitioner's cross-examination, his counsel stated: "That's all the questions I have on the limited area now." ECF No. 27-7 at 4.

Later during trial, the trial court had a discussion on the record discussing Petitioner's motion to strike Campos-Lares testimony or the possibility of the government or the court granting Campos-Lares immunity. ECF No. 27-8 at 221-39. The government declined to extend immunity, as did the trial court. The trial court denied immunity for several reasons, but one reason was that the testimony (that Campos-Lares had killed before) was not exculpatory. Id. at 224. Petitioner seemed to agree that the testimony was not exculpatory but argued that the testimony went to the "core" of Campos-Lares testimony as a quasi-gang expert. Id. at 224-25. Despite that argument, the trial court remained steadfast in its denial of judicial immunity.

Further on in the discussion, Petitioner's counsel and the trial court discussed Petitioner's counsel's understanding and resulting confusion of the trial court's limitation:

[THE COURT:] So the motion to strike is where we're at. And I'm assuming your arguments are pretty much the same, that because the government was able to present this evidence concerning his knowledge of his gang, about gangs, that it's now a requirement that I strike his entire testimony because further questions can't be asked about him killing people.
And so is there anything further you wanted to add to that motion?

13

> [PETITIONER'S COUNSEL'S:] There is. And the Court's characterized it as <u>you couldn't ask further questions about him killing</u>. That wasn't my understanding of the limitation.
> 
> My understanding of the limitation was anything that might implicate his Fifth Amendment right, and that included, for instance, probation—excuse me affiliation, gang association, gang activity.
>
> Like Mr.--his attorney indicates in e-mail, if he were called, he would assert a Fifth Amendment privilege against—regarding any additional questions related to personal associations, locations, et cetera.
>
> And so part of the maybe confusion in my own mind, once that confusion came up, we might have been operating on different ideas of what was allowed and what wasn't allowed.
>
> [THE COURT:] Well, the record is what the record is. All I know is when that sort of bombshell was dropped, I said, okay, he needs counsel on that. And then we didn't have any further discussion on that, as far as I know. Maybe we did at a sidebar. But I thought, you know, counsel did and were able to go into other areas besides him killing other people. And so I didn't throw a huge blanket on a Fifth Amendment situation because I'd even engaged or appointed Mr. Asterlin to represent him.
>
> If that's what's happened now, then that's what's happened, but I thought the limitation was asking him more questions about killing people or killing anyone, whatever his testimony was in that area. I thought counsel, all three defense counsel, did a good job of cross-examining him on the aspects of his other—other aspects of his testimony besides that. So I didn't know that you felt foreclosed from that. I didn't see that that's what I had indicated.

<u>Id.</u> at 228-29.

Petitioner filed a motion to strike Campos-Lares testimony. ECF No. 27-1 at 230-236. The trial court issued a lengthy ruling regarding Petitioner's motion to strike, concluding that the only portion of Campos-Lares testimony that would be stricken was his admission of killing someone. ECF No. 27-2 at 144-55. On appeal, the California Court of Appeal concluded that Petitioner was provided an opportunity cross-examine Campos-Lares:

> As the trial court properly noted, before [Campos-Lares] was excused as a witness and <u>subsequently</u> invoked his privilege against self-incrimination, all defendants had the opportunity to question him fully on any subject save that of participating in homicides, and defense counsel never identified any subject from which his <u>interpretation</u> of the court's limitation on questioning precluded him from addressing. [Campos-Lares] was at best a peripheral witness in this matter, uninvolved in the central issue of the shooting and cumulative of other gang evidence, so questioning him about his personal involvement in homicides or other unspecified criminal participation in gang activities in order to explore the validity of his trial persona as a gang member is utterly collateral. We do not find any abuse of discretion in the trial court's limited strike of [Campos-Lares'] testimony. Given this limited restriction on the cross-examination of [Campos-Lares], defendant cannot establish a violation of the right to confrontation, and therefore we do not need to consider any

14

>     prejudice from allowing the remainder of [Campos-Lares'] testimony to stand.
>
> ECF No. 27-20 at 5-6 (emphasis in original).

Petitioner's argument fails because the appellate court's determination was neither contrary to nor based on an unreasonable application of clearly established federal law. First, Petitioner and his co-defendants cross-examined Campos-Lares. For Petitioner's rights to have been violated, he must have not been afforded a "full and fair" opportunity to cross-examine the witness, or the cross-examination blocked inquiry to "direct" matters. See Delaware, 474 U.S. at 22; Seifert, 648 F.2d at 561. But Petitioner was afforded the opportunity to cross-examine Campos-Lares. Indeed, his cross-examination spanned 23 pages of transcript and delved into questions regarding the Sureños and Petitioner. Second, Campos-Lares testimony, as pointed out by the appellate court, was about collateral matters and not subject to being stricken. See Seifert, 648 F.2d at 561. Petitioner's counsel effectively conceded at trial the fact that Campos-Lares' testimony was not exculpatory. ECF No. 27-8 at 224.

Moreover, it appears that the trial court's limitation at the time of Campos-Lares was regarding his testimony that he has killed a rival gang member before. There was no explicit ruling from the bench limiting cross-examination to other areas. While a side-bar discussion occurred at the end of Petitioner's cross-examination, Petitioner did not place an objection on the record or even note for the record that the trial court had limited his cross-examination. Despite any possible confusion on the part of Petitioner's counsel, the trial court never explicitly limited cross-examination on direct matters. Thus, the appellate court's determination that the trial court did not violate Petitioner's confrontation rights was neither contrary to nor based on an unreasonable application of clearly established federal law.

### C. Jury Instruction Claims

In general, to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment." Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)). To prevail, petitioner

must demonstrate that an erroneous instruction "'so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp, 414 U.S. at 147). In making its determination, this court must evaluate an allegedly ambiguous jury instruction "'in the context of the overall charge to the jury as a component of the entire trial process.'" Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)). Further, in reviewing an allegedly ambiguous instruction, the court "must inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494 U.S. 370, 380 (1990)). Petitioner's burden is "especially heavy" when the court fails to give an instruction. Henderson v. Kibbe, 431 U.S. 145, 155 (1977). Where an instruction is missing a necessary element completely, the "reasonable likelihood" standard does not apply and the court may not ". . . assume that the jurors inferred the missing element from their general experience or from other instructions. . . ." See Wade v. Calderon, 29 F.3d 1312, 1321 (9th Cir. 1994). In the case of an instruction which omits a necessary element, constitutional error has occurred. See id.

Petitioner argues that the trial court erred regarding two jury instructions: attempted murder and voluntary intoxication. As discussed further below, the Court finds that the appellate court's determination on both issues were neither contrary to nor based on an unreasonable application of clearly established federal law.

          1.     Attempted Murder

Petitioner contends that the trial court's jury instruction on attempted murder was constitutionally defective. ECF No. 1 at 38. Specifically, he argues that the instruction is patently incorrectly because it references an intent to kill—but not an intent to kill unlawfully, or with express malice. Id. Petitioner argues that because he acted in the honest belief that he needed to prevent harm to his brother by firing his gun, his intentional action lacked express malice. Id. at 41. CALCRIM 600 requires the prosecution to prove that: (1) the defendant took at least one direct but ineffective step toward killing another person; and (2) that the defendant intended to kill that person.

///

The Court of Appeal considered this argument and found it unpersuasive for two reasons. First, it found that the pattern instruction used in Petitioner's case—CALCRIM 600—was a correct statement of the law. ECF No. 1 at 60. Second, it found that "the jury resolved the question of malice adversely to [Petitioner] in the instructions on heat of passion and unreasonable self-defense, because in finding him guilty it necessarily found an intent to kill in the absence of both heat of passion or unreasonable self-defense." Id.

As a threshold matter, Petitioner's argument that the jury instruction a "was allegedly incorrect under state law is not a basis for habeas relief." Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). Instead, "the only question for [a federal habeas court] is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. at 72 (internal quotation marks and citations omitted). A violation of due process occurs if a trial is rendered fundamentally unfair. See id. at 72-73; Duckett v. Godinez, 67 F.3d 734, 746 (9th Cir. 1995).

Here, Petitioner cannot establish unfairness because the challenged jury instruction was valid under California law. See People v. Ramos, 193 Cal.App.4th 43, 47 (2011); People v. Lawrence, 177 Cal.App.4th 547, 557 (2009). Further, CALCRIM 600 does correctly state the express malice requirement of attempted murder. See Estrada v. Gonzales, No. ED CV 09-2039 R JCG, 2011 WL 665441, at *9 (C.D. Cal. Jan. 6, 2011) ("Ergo, since 'express malice' means 'intent to unlawfully kill,' the Court finds that CALCRIM 600 correctly states the express malice requirement of attempted murder.") Thus, the appellate court's decision was not contrary to, or an unreasonable application of, clearly established federal law and was not an unreasonable determination of the facts.

### 2. Involuntary Intoxication

Petitioner argues that the trial court erred when it instructed the jury that it could not consider voluntary intoxication with respect to unreasonable self-defense. ECF No. 1 at 42. Specifically, he argues that the trial court's instruction to the jury that they could not consider the effects of voluntary intoxication when deciding if he acted with express malice and whether he acted in the imperfect self-defense was unconstitutional. Id. As stated above, this claim fails

because the trial court relied on valid California law.  See People v. Soto, 4 Cal.5th 968, 978-81 (2018) (holding that evidence of voluntary intoxication cannot be used to support a claim of lack of express malice based on unreasonable belief in need to act in self-defense.)  Thus, the appellate court's decision was not contrary to, or an unreasonable application of, clearly established federal law and was not an unreasonable determination of the facts.

### D. **Ineffective Assistance of Counsel**

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  See id. at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  See id. at 690.  The federal court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  See id.  In making this determination, however, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice.  See Strickland, 466 U.S. at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.; see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

Petitioner argues that his trial counsel was ineffective for failing to raise objections to the trial court's attempted murder and involuntary intoxication jury instructions. See ECF No. 1 at 49. As discussed above, the Court finds that the state court's determinations on these claims were neither contrary to nor based on an unreasonable application of the law. Thus, Petitioner cannot show that his trial counsel's performance was inadequate or that he suffered any prejudice.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that Petitioner's petition for a writ of habeas corpus, ECF No. 1, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 25, 2022

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE